# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANET DEMPSEY-LOWDEN, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 16-6112 |
| LEVITTOWN-FAIRLESS HILLS RESCUE SQUAD, INCORPORATED, | |
| Defendant. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**　　　　　　　　　　　　　　　　　　　　　**JANUARY 11, 2018**

　　　　Plaintiff Janet Dempsey-Lowden ("Dempsey-Lowden") filed suit in this Court against Defendant Levittown-Fairless Hills Rescue Squad, Incorporated, alleging her employment was terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951-963. Dempsey-Lowden's "First Amended Civil Action Complaint" ("Amended Complaint") alleges identical violations of the ADA and the PHRA under the theories of (1) discrimination, (2) retaliation, and (3) failure to accommodate.

　　　　Presently before the Court is Defendant's Motion for Summary Judgment, which seeks dismissal of this action based on the merits and timeliness of the Complaint. Dempsey-Lowden has filed a Response in Opposition, and Defendant has filed a Reply Brief. For the reasons noted below, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

### A. Factual History

Dempsey-Lowden began working for Defendant in 2000 as an unpaid volunteer and became a paid employee in 2010 as a paramedic. (Pl.'s Statement of Material and Disputed Facts[1] ("SMDF") ¶ 1.) At the time of her termination in January 2016, she was working approximately forty-eight hours per week. (*Id.* ¶ 5.) Her supervisors were Joel Rutkowski ("Rutkowski"), the Chief of Operations, and Ben Calhoun ("Calhoun"), the Deputy Chief of Operations. (*Id.* ¶ 6.)

Paramedics with Defendant are required to prepare "patient care reports" for each ambulance run. (Def.'s Statement of Undisputed Material Facts[2] ("SUMF") ¶ 2.) Defendant's "Procedurals Manual" requires patient care reports to be completed by the end of a shift or, if that is not possible, within twenty-four hours of the completion of the call. (*Id.*) Paramedics were permitted to work past the end of their scheduled shift and were paid for the time that was necessary to complete patient care reports timely. (*Id.* ¶ 3.)

In October 2015, it was reported to Calhoun that Dempsey-Lowden was staying past the end of her shift to complete patient care reports, but that he "should take a look at [Dempsey-Lowden's] time card." (*Id.* ¶ 5 (citing Def.'s Mot. Summ. J., Ex. E ("Calhoun Dep.") at 9-10).) Calhoun conducted an investigation and concluded there were numerous discrepancies between the time Dempsey-Lowden claimed to have spent and was paid for completing the reports and the time she actually spent working on the reports. (*Id.* ¶ 8 (citing Calhoun Dep. at 16-19).) Calhoun's investigation revealed numerous instances of time theft, resulting in Dempsey-Lowden being suspended without pay for one twelve-hour shift. (*Id.* ¶¶ 10-12.) By letter dated

---

[1] Dempsey-Lowden's Statement of Material and Disputed Facts can be located at Doc. No. 22-1.

[2] Defendant's Statement of Undisputed Material Facts can be located at Doc. No. 19.

2

October 15, 2015, Dempsey-Lowden was notified that "[a]ny future incidents of this nature will be cause for immediate termination." (*Id.* ¶ 13 (citing Def.'s Mot. Summ. J., Ex. Q) (alteration and emphasis in original).)

On November 6, 2015, Dempsey-Lowden injured her left knee while working for Newtown Ambulance Squad. (Pl.'s SMDF ¶ 10.) Rutkowski and Calhoun became aware of her knee condition in November 2015, including that she was feeling pain and discomfort. (*Id.* ¶ 13.) On January 12, 2016, Dempsey-Lowden had an MRI that revealed, among other things, a "high-grade radial tear at the posterior horn of the medial meniscus in the left knee." (*Id.* ¶ 24.)

On January 14, 2016, Katelyn Stahl ("Stahl"), a paramedic Defendant employed, told Calhoun that on December 31, 2015, Dempsey-Lowden and Emergency Medical Technician Jeremy Fox were in the "charting room" and were watching movies when they were supposed to be preparing patient care reports. (Pl.'s Br. in Opp'n Def.'s Mot. Summ. J., Ex. E at 37-39.) Stahl sent an email to Calhoun recounting her observations. (*Id.* 37.) Calhoun conducted an investigation and concluded that Dempsey-Lowden had once again committed time theft. (Def.'s SUMF ¶¶ 21-26.)

On January 18, 2016, Dempsey-Lowden sent Rutkowski and Calhoun an email detailing the results of her MRI and that she would need medical leave for surgery to her left knee. (Pl.'s SMDF ¶ 28.) She informed Rutkowski and Calhoun that she would be out of work on medical leave until her surgery on February 4, 2016, and would need an additional eight weeks after the surgery for recovery. (*Id.*)

On January 20, 2016, just two days after she sent her email, Defendant terminated Dempsey-Lowden's employment at a meeting in which Rutkowski, Calhoun, and Cynthia Herr were present. (*Id.* ¶ 35, 37, 38.) At her deposition, Dempsey-Lowden testified that Rutkowski

3

stated, "[i]f you're injured[,] you're useless to me as an employee."  (*Id.* ¶ 39 (citing Pl.'s Br. in Opp'n Def.'s Mot. Summ. J., Ex. A ("Dempsey-Lowden Dep.") at 95).)  Regarding Rutkowski's statement, Calhoun testified that Rutkowski stated, "[g]et out of here, you're fired, you're worthless or useless to me anyway."  (*Id.* ¶ 41 (citing Pl.'s Br. in Opp'n Def.'s Mot. Summ. J., Ex. D at 39).)  Dempsey-Lowden claims that Rutkowski's statement evidences his discriminatory intent in firing based on her alleged disability in violation of federal and Pennsylvania law.  (*Id.* ¶ 39.)

      **B.**     **Procedural History**

Dempsey-Lowden filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 1, 2016, which was dual-filed with the Pennsylvania Human Relations Commission.  (*Id.* ¶ 68; Def.'s SUMF ¶ 44.)  On June 7, 2016, an investigator for the EEOC sent Dempsey-Lowden's counsel a letter and a separate email, advising that her charge of discrimination would be dismissed and a "Dismissal and Notice of Rights" ("right-to-sue") letter would be issued "shortly."  (Pl.'s Br. in Opp'n Def.'s Mot. Summ. J., Ex. O; Def.'s SUMF ¶ 45.)  The record indicates that the EEOC sent Dempsey-Lowden the right-to-sue letter on June 9, 2016.  (Def.'s SUMF ¶ 47 (citing Def.'s Mot. Summ. J., Ex. M ("Right-to-Sue Letter").).  The right-to-sue letter has a mailing date of June 9, 2016, and it is carbon-copied to Dempsey-Lowden's counsel, the Defendant, and Susan Metts ("Metts"), an Administrative Manager for Defendant.  (*See* Right-to-Sue Letter.)  It provides that "[y]ou may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost."  (*Id.* (emphasis in original).)

Dempsey-Lowden and her counsel both claim they never received the right-to-sue letter. (Pl.'s SMDF ¶¶ 70, 71.) On November 10, 2016, Dempsey-Lowden's counsel reached out to the EEOC to request the right-to-sue letter in accordance with their procedures when a right-to-sue letter has not been received. (*Id.* ¶ 81.) The EEOC responded via email on November 17, 2016, enclosing the June 7, 2016 email and the right-to-sue letter dated June 9, 2016. (*Id.* ¶ 82 (citing Pl.'s Br. in Opp'n Def.'s Mot. Summ. J., Ex. O).)

On November 21, 2016, Dempsey-Lowden filed suit in this Court against Defendant, alleging violations of the ADA, Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and the PHRA. She subsequently filed an Amended Complaint on September 15, 2017 that asserts only ADA and PHRA claims. (*See* Amended Compl.) Defendant filed a Motion for Summary Judgment on October 6, 2017 that seeks dismissal of this action on the merits and because the Complaint was filed untimely. As to timeliness, Defendant claims that more than ninety days had elapsed from the time Dempsey-Lowden received the right-to-sue letter until her Complaint was filed. We agree and will grant Defendant summary judgment as to the ADA claim on the basis that Dempsey-Lowden's Complaint is time-barred.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

In ADA cases, a plaintiff must file suit within ninety days of receiving a right-to-sue letter from the EEOC. *See Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 n.4 (3d Cir. 2003) (citing 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice [by the EEOC,] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved.")); *see also* 42 U.S.C. § 12117(a) (stating that the "powers, remedies, and procedures" set forth in § 2000e-5 apply to ADA claims).

"The statutorily-created ninety-day period starts when either the claimant or her attorney receives a right-to-sue letter, whichever is earlier." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92-93 (1990)). "When the actual date of receipt is known, that date controls." *Id.* (citations omitted). "However, in the absence of other evidence, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it." *Id.* (citing Fed. R. Civ. P. 6([d]); *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 n.2 (3d Cir. 1986)). "There is a presumption that a right-to-sue letter properly mailed is not only received by the addressee, but also is received in the due course of the mails." *Loftin v. N.Y.S. Dep't of Mental Health*, No. 02-4532, 2003 WL 221767, at *1 (S.D.N.Y. Jan. 31, 2003) (citing *Battaglia v. Heckler*, 643 F. Supp. 558, 559-60 (S.D.N.Y. 1986)). The United States Court of Appeals for the Third Circuit ("Third Circuit") has "strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

Here, the right-to-sue letter addressed to Dempsey-Lowden has a mailing date of June 9, 2016. (*See* Right-to-Sue Letter.) Dempsey-Lowden testified at her deposition that the address on the letter was correct, (*see* Dempsey-Lowden Dep. at 30), and it is the address that she listed on her Complaint and Amended Complaint in this Court as well, (*see* Compl.; Amended Compl.). The actual date she received the letter is unknown, as she testified that she did not recall receiving it. (Dempsey-Lowden Dep. at 30.) Accordingly, pursuant to Fed. R. Civ. P. 6(d), she is presumed to have received the right-to-sue letter on June 13, 2016.[3] Dempsey-Lowden filed suit in this Court on November 21, 2016, but the latest she could have filed her Complaint for it to be timely was September 13, 2016. *See* § 2000e-5(f)(1). Therefore, her

---

[3] June 12, 2016 was a Sunday.

Complaint is time-barred because it was filed outside of the ninety-day statutory window in § 2000e-5(f)(1).

Dempsey-Lowden argues that she rebuts the presumption that she received the right-to-sue letter because neither she nor her counsel actually received it. (*See* Pl.'s Br. in Opp'n Def.'s Mot. Summ. J. at 33-38.) As to her counsel, she has detailed the extensive records-keeping procedures the law office keeps in ensuring that all deadlines are met. Regarding herself, Dempsey-Lowden simply claims that she does not recall receiving the letter in the mail. (Dempsey-Lowden Dep. at 30.)

We have no doubt that Dempsey-Lowden's counsel maintains appropriate records-keeping procedures to ensure that all filings are timely. However, that fact is irrelevant because the ninety-day clock begins ticking "when either *the claimant* or her attorney receives a right-to-sue letter, whichever is earlier." *Seitzinger*, 165 F.3d at 239 (citing *Irwin*, 498 U.S. at 92-93) (emphasis added). Here, the record clearly evidences that Dempsey-Lowden was issued a right-to-sue letter on June 9, 2016. Any argument that her counsel did not receive the letter misses the mark because Dempsey-Lowden is presumed to have received it on June 13, 2016. *See* Fed. R. Civ. P. 6(d). To the extent she argues that, because her counsel did not receive the letter shows that she did not receive it, we are unpersuaded. Indeed, she admits there are times when the EEOC sends the right-to-sue letter to the plaintiff, but not to counsel. (Pl.'s Br. in Opp'n Def.'s Mot. Summ. J. at 37) ("Moreover, at the time of her deposition, [plaintiff's counsel's paralegal] could recall offhand at least three occasions where the EEOC had failed to send counsel a [right-to-sue] letter, and that notices for the same were only provided to counsel because the client had received the charge and called in to ask questions about the same. . . . In these instances, [plaintiff's counsel's paralegal] would follow up with the EEOC to inquire why the [right-to-sue]

8

letter was not similarly provided to counsel . . . ."). Moreover, Defendant's Administrative Manager, Metts, has filed an affidavit where she provides that she received the right-to-sue letter on June 15, 2016. (Def.'s SUMF ¶ 56 (citing Def.'s Mot. Summ. J., Ex. I ¶¶ 3-4).) While it is unfortunate that Dempsey-Lowden's counsel apparently never received the letter, we cannot discount the fact that the record includes a right-to-sue letter, correctly addressed to Dempsey-Lowden, with a mailing date of June 9, 2016.

Dempsey-Lowden also claims that she did not recall ever receiving the right-to-sue letter from the EEOC. (*See* Pl.'s Br. in Opp'n Def.'s Mot. Summ. J. at 34, 37-38.) We find that argument similarly unpersuasive to rebut the presumption that she received it. The Third Circuit faced a similar factual scenario in *Seitzinger*. In *Seitzinger*, the EEOC issued a right-to-sue letter to the plaintiff and her attorney on June 15, 1999. 165 F.3d at 238. Suit was filed on September 19, 1999, which was more than ninety days after she presumptively received the letter. *Id.* at 239. The plaintiff did not "recall receiving a right-to-sue letter directly from the EEOC," but the Third Circuit noted that, "[n]evertheless, the right-to-sue letter was addressed to her at the address at which she has received information from the EEOC since this action began." *Id.* Therefore, "she failed to meet the EEOC's ninety-day filing period."[4] *Id.*

Like the plaintiff in *Seitzinger*, Dempsey-Lowden testified that she did not recall receiving the right-to-sue letter from the EEOC. (Dempsey-Lowden Dep. at 34, 37-38.) However, the letter was addressed to her at her correct address. Thus, we conclude that she has

---

[4] While the plaintiff filed suit past the ninety-day limitation in *Seitzinger*, the Third Circuit ultimately reversed the District Court's grant of summary judgment on the basis that equitable tolling may be appropriate. *See Seitzinger*, 165 F.3d at 242. There, the plaintiff's attorney affirmatively misrepresented to his client about filing the Complaint. *Id.* at 241. The Third Circuit held that the plaintiff adduced sufficient facts to overcome summary judgment on the equitable tolling issue. *Id.* Clearly, such a factual scenario is not present in the instant case.

not overcome the presumption that she received the right-to-sue letter and that her Complaint is time-barred.

At her deposition, Dempsey-Lowden detailed the household procedures about how mail is brought into her house. Her testimony is not particularly helpful to her cause. She testified that in June 2016, she, her daughter (who was twenty-one years old at the time), her grandson (two-months old at the time), and her husband, lived with her. (Dempsey-Lowden Dep. at 31.) Dempsey-Lowden was not regularly home at the time because she was back working. (*Id.* at 33.) Thus, "whoever was home or happen [sic] to be there" would bring the mail in and put it "onto the table or onto a desk." (*Id.* at 32.) She stated that her daughter was home with her newborn baby and was "gathering most of the mail." (*Id.* at 33.) When asked what her daughter would do with the mail after gathering it, Dempsey-Lowden testified, "I don't know. Like other than – I'm assuming the bills got paid because my lights are still on[,] but it would go to [the] bill pile or if it was junk mail it would go into the garbage." (*Id.*)

Clearly, Dempsey-Lowden's testimony that she did not recall receiving the right-to-sue letter is insufficient to overcome the presumption that she received it, especially in light of the fact that the letter lists her correct name, correct home address, and includes a mailing date of June 9, 2016. Accordingly, we will dismiss her ADA claim as untimely.[5] We further decline to exercise supplemental jurisdiction over Dempsey-Lowden's PHRA claim pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment.

An appropriate Order follows.

---

[5] As noted above, the ninety-day statutory period can be equitably tolled under certain circumstances. *See Burgh*, 251 F.3d at 470. Dempsey-Lowden provides no argument that the ninety-day period should be equitably tolled, nor do the circumstances present such a basis.

10